GEORGE W. SMITH, APPELLANT, *v.* THOMAS LANE, RESPONDENT.

*When one may administer treatment to a sick persons without a license and is entitled to compensation therefor — Chapter 436 of 1874 — to whom it is not applicable.*

Chapter 436 of 1874, declaring it to be a misdemeanor for any person to practice medicine or surgery who is not authorized so to do by a license or diploma from some chartered school, etc., does not apply to one who undertakes to cure diseases by manipulating the patient's body by rubbing, kneading and pressing it; and such person is entitled to recover a compensation agreed to be paid for such services, although he is not a graduate of a medical school and has no license permitting him to practice either medicine or surgery.

APPEAL from a judgment in favor of the defendant, entered upon a trial had before a referee.

*William W. Northrup*, for the appellant.

*Winfield, Leeds & Morse*, for the respondent.

DANIELS, J. :

The action was brought to recover the price which it was alleged the defendant agreed to pay the plaintiff for the treatment of himself and his wife for certain bodily disabilities. It consisted entirely of manipulation with the hand. It was performed by rubbing, kneading and pressure. The evidence given by the plaintiff was to the effect that he was employed by the defendant to perform these services for a specific compensation, and that he had performed them until the amount due to him was the sum of $149. Upon the close of the case on his part, the referee dismissed the complaint because it appeared that the plaintiff was not a graduate of any medical school, and had no license permitting him to practice either medicine or surgery. The direction was given because of the prohibition contained in chapter 436 of the Laws of 1874, and as no other reason appeared in the case or the evidence which was given that would prevent the plaintiff from recovering, and whether this act contains anything subjecting him to such disability, is the only substantial

point which requires to be considered in the case. The act did not in terms prohibit any person from following an occupation of this description, and without some prohibition it would seem to be as lawful as any other in which one person might render services at the request of and for the benefit of another. The statute in terms merely declared it to be a misdemeanor for any person to practice medicine or surgery who is not authorized to do so by a license or diploma from some chartered school, state board of medical examiners or medical society, or who shall practice under cover of a medical diploma illegally obtained. (Laws 1874, p. 557, sec. 3.)

And for the purpose of qualifying a person, neither licensed nor possessing a diploma of the nature of that mentioned, to practice medicine or surgery, it was provided that he should obtain a certificate from the censors of a medical society either in the county, district or State, in which it should be set forth that he had been found qualified to practice all of the branches of the medical art mentioned in it. (Id., 556, sec. 1.)

The second section of this act is not required to be considered, for it merely provided the manner in which persons might be obliged to apply for and obtain the certificate. It was in no manner shown upon the trial that either of these societies would issue a certificate for the mere purpose of including in it the occupation followed by the plaintiff. And the language of the act is at variance with the supposition, that it would be done, for the certificate is not permitted to be issued unless the person applying for it shall be found qualified to practice all the branches of the medical art mentioned in it. To entitle a person to a certificate under this provision, it would be necessary that he should be qualified either to practice medicine or surgery in all its branches. If that was not made to appear he could receive no certificate under the provisions of this act. For that reason it appears to be quite manifest that the object of the legislature in the enactment of this chapter was only to provide for regulating the practice of medicine or surgery, as those terms are usually or generally understood, and confining them to such significance, it is evident that they would not include the occupation of the plaintiff. The practice of medicine is a pursuit very generally known and understood, and so also is that of surgery. The former includes the application and use of

medicines and drugs for the purpose of curing, mitigating or alleviating bodily diseases, while the functions of the latter are limited to manual operations usually performed by surgical instruments or appliances. It was entirely proper for the legislature, by means of this chapter, to prescribe the qualification of the persons who might be intrusted with the performance of these very important duties. The health and safety of society could be maintained and protected in no other manner. To allow incompetent or unqualified persons to administer or apply medical agents, or to perform surgical operations, would be highly dangerous to the health as well as the lives of the persons who might be operated upon, and there is reason to believe that lasting and serious injuries as well as the loss of life have been produced by the improper use of medical agents and surgical instruments or appliances. It was the purpose and object of the legislature by this act to prevent a continuance of deleterious practices of this nature, and to confine the uses of medicines and the operations of surgery to a class of persons who, upon examination, should be found competent and qualified to follow these professional pursuits. No such danger could possibly arise from the treatment to which the plaintiff's occupation was confined. While it might be no benefit, it could hardly be possible that it could result in harm or injury.

And for that reason no necessity existed for interfering with this pursuit by any action on the part of the legislature. It may be that credulous persons would be deceived into the employment of the plaintiff, and in that manner subjected to imposition. But it was no part of the purposes of this act to prevent persons from being made the subjects of mere imposition. If the plaintiff's pretentions were well founded then diseases would no longer be formidable, and even death itself would be deprived of its terrors. But because he has professed more than he has the ability to accomplish he cannot, on that account, be subjected to the disability provided for in this act. His system of practice was rather that of nursing than of either medicine or surgery. It could, in no event result, in any other injury to the person practiced upon than that of possible financial loss. No bodily disability or diseases could either result from or be aggravated by the applications made by him. And what he did in no just sense either constituted the

practice of medicine or surgery. He neither gave nor applied drugs or medicine, nor used surgical instruments. He was outside of the limits of both professions, and neither one of the schools or societies mentioned in the act had jurisdiction over him or could have intervened to authorize, restrict or prevent him in the occupation he was engaged in following. While his services may have afforded no benefit to the persons receiving them, he was not prohibited from performing them by anything in this act; and no other law was violated by the contract which the evidence tended to show had been entered into.

It was not necessary that proof should be given of the value of the services. It was sufficient for the purposes of the action that a contract had probably been made, by which a specific sum was agreed to be paid for their performance. As the case stood, the referee was not justified in dismissing the complaint. The judgment for that reason should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.